*Ex parte* DAVIES.

Opinion delivered December 19, 1903.

1. CERTIORARI—CONTEMPT.—Certiorari is the. proper remedy to bring up for review a transcript of the record in a proceeding in the chancery court for contempt. (Page 360.)

2. CONTEMPT—MODIFICATION OF JUDGMENT WITHOUT NOTICE—PREJUDICE.— One against whom a judgment imposing a fine and imprisonment in a contempt proceeding has been rendered cannot complain that

the judgment was modified without notice to him if the modification consisted merely in a remission of the imprisonment. (Page 360.)

3. SAME—EXCESSIVE PUNISHMENT—REMISSION OF EXCESS.—It is immaterial whether the original judgment in a contempt proceeding was excessive in imposing imprisonment if the excess was remitted. (Page 361.)

4. SAME—LANGUAGE HELD TO CONSTITUTE.—In a proceeding against an attorney for contempt in having charged the court with corruption, a finding of the court that accused "asserted in open court that he had heard the court was corrupt and had been bribed, and that he makes the assertion upon the information of others," is sufficient, on certiorari, to sustain a conviction of contempt. (Page 362.)

5. SAME—LANGUAGE HELD NOT TO CONSTITUTE.—In a proceeding against an attorney for contempt in charging the court with corruption, accused was asked by the court if he had any evidence to offer showing why he should not be punished for contempt, and answered that he knew nothing except what had been told him by others. He was then asked: "Have you given publicity to what you have been told?" He replied, "I have said what I have been told." *Held,* that the reply to the court's question did not constitute contempt. (Page 365.)

Petition for certiorari to Garland Chancery Court.

Judgment quashed.

*R. G. Davies, pro se.*

In some jurisdictions the writ of certiorari is used in the nature of a writ of error, and then it lies to revive and correct a judgment of the lower court for all errors of law appearing therein, 4 Enc. Pl. & Pr. 125, 126; 35 Ark. 458; 54 N. Car. 202; 24 N. Y. 74; 101 N. Y. 245; 1 Grant's Cases, 453; 6 Ia. 245; 2 Utah, 560. But such application must be made upon notice to the adverse party. 20 Ark. 636; 23 Ark. 18; 51 Ark. 317; 34 Ark. 291; 40 Ark. 223; 17 Enc. Pl. & Pr. 923. Such notice must be reasonable. 4 Enc. Pl. & Pr. 925. As to the nature of the evidence upon which a record may be corrected on certiorari, see: 33 Ark. 218; 6 Bush (Ky.), 547; 13 Cal. 107. The judgment for contempt is void because the court had no power to inflict the penalty adjudged. Sand. & H. Dig. § 686. The warrant or the order of commitment should have set out the substance of the offense. Sand. & H. Dig. § § 688, 695; 99 Cal. 526; 32 Conn.

1; 96 Ia. 68; 30 S. W. 158; 35 Ill. App. 505. Habeas corpus or direct appeal will lie equally to release one held for an alleged contempt which is manifestly no contempt. 36 La. Ann. 352; 25 Miss. 883; 7 Mo. App. 367; 5 Ired (N. Car.), 149. There should have been some sort of written charges filed and of record, upon which to predicate an order of imprisonment. Const. Ark., art. 11, § 15; *Cf.* 9 Oh. St. 337; 114 Mass. 230; 2 Disney (Oh.), 354. The mere finding of a court that certain acts constitute a contempt is not conclusive, and the judgment may properly be reviewed on certiorari. 24 N. Y. 74; 101 N. Y. 245; 64 N. Car. 202; 1 Grant's Cases (Pa.), 453; 6 Ia. 245: 57 Ia. 611; 2 Utah, 560; 35 Ark. 458.

*Cantrell & Loughborough,* for Leland Leatherman. Chancellor.

See, generally, as to power of courts to punish for contempts; 16 Ark. 384. By virtue of the Act of 1903 (Acts 1903, p. 197) the sitting of the court which began April 13, 1903, was a continuation of the December term of 1902; and no question arises as to a lapse of term before the modification of the order. The court could modify its orders during term time. 27 Ark. 297.

RIDDICK, J. In this case R. G. Davies, an attorney at law of Garland County, has procured from this court a writ of certiorari to the clerk of the Garland Chancery Court to bring up a transcript of the record in the proceeding against him for contempt, to the end that the judgment in said case may be reviewed by this court. See *Harrison* v. *State,* 35 Ark. 458; *Burgett* v. *Apperson,* 52 Ark. 213; *Ex* parte *Biggs,* 64 N. C. 202.

The record shows that the petitioner, Davies, had been ordered to show cause why he should not be adjudged guilty of contempt of the chancery court of Garland County by reason of the fact that he had, as the court was informed, made assertions concerning the conduct of the judge of said court to the effect that the judge was corrupt, and had accepted a bribe in a case then pending before the court. Davies appeared in court, and on trial of the charge by the court he was found guilty of contempt, and fined $50. Davies now contends that the judgment should be quashed and set aside for the reason, as he says, that no written order to show cause was ever served upon him, and that he had no

notice of the charge prior to the trial and judgment. As the acts of Davies upon which this charge was based did not take place in the presence of the court, it is evident that he should have been given sufficient notice to afford him a reasonable opportunity to rebut and disprove the charge. No written copy of such a notice or order to show cause appears in the transcript, though the judgment recites that Davies was present in court, and had notice of the charge. But we need not notice that point further, for the reason that the judgment for the fine assessed against petitioner for this contempt was afterwards set aside by order of the court made at the same term at which it was rendered; and whether he had notice or not, he was not prejudiced by this proceeding.

It further appears from the judgment that during the progress of the trial of this charge of contempt Davies in open court made use of language towards and about the judge of the court, in his presence and hearing, for which he was adjudged guilty of another contempt, and his punishment assessed at a fine of $50 and also imprisonment in jail for thirty days. On another day of the same term of the court, on motion of Mr. Latta, a member of the bar, and upon the recommendation of other members of the bar, the court modified this judgment by setting aside the order for imprisonment, and permitting the judgment to stand for the fine of $50 only. Petitioner contends that the motion to modify was made without his request or permission, and that in considering the judgment we must take it as originally rendered, and that, when so considered, the punishment was beyond that permitted by the statute; but we think it is immaterial whether he consented to the modification of the judgment or not, for it is clear that the court had the power to make it. Acts of 1903, p. 198. If the modification of the judgment had made it more onerous upon the petitioner, he might justly complain if the change in the judgment had been made without notice; but the fact that the court on his own motion and without notice to him remitted a portion of the punishment adjudged against him gives him no just ground for complaint.

Again, if we should adopt the contention of petitioner on this point and conclude that the judgment for imprisonment was excessive, that would not affect the judgment, so far as the fine of $50 was concerned, and that is all that remains against the

petitioner now. So the contention of petitioner on this point must be overruled.

The petitioner further contends that it was the duty of the court to set out in his judgment the facts constituting the contempt, and that the facts set out in the judgment do not show any contempt, and that the findings are not sufficient to sustain the judgment. As contempts committed in the presence of the court may be summarily tried and punished without process or pleadings of any kind, it is highly proper that the judgment should contain a finding of the facts constituting the contempt. Chief Justice Ruffin of the Supreme Court of North Carolina, in a case of this kind before that court, said that "it befits every court which has a proper tenderness of the rights of the citizens and a due respect to its own character to state in its judgment explicitly the facts constituting the contempt, not suppressing those on which the person might be entitled to be discharged, more than it would insert others which do not exist, for the sake of justifying the commitment." Ex parte *Summers,* 5 Iredell's Law, 149. He shows clearly and convincingly the reasons why such a finding of facts should be made in the judgment, but he held that the absence of such a finding did not render the judgment void. Other courts have come to a different conclusion; but we need not discuss the question here, for it appears to us that the court did make a finding of facts in this case. The judgment contains the following recital: "The court also finds that the said R. G. Davies did not offer himself as a witness, but said that he had no evidence except what had been told him. He made the assertion in open court that he heard the court had been bribed, but that he had no personal knowledge whether it was true or not; that he repeated in open court that he had heard the court was corrupt and had been bribed, and that he makes the assertion upon the information of others." The judgment, after stating that the court informed the petitioner that he was at liberty to introduce any witness to prove that the court had accepted a bribe, but that he declined to do so, then states further that the court finds that "the defendant is guilty of contempt by reason of the language used in open court."

Now, it seems to us that we have here in the judgment a finding of the facts which the court adjudged to be a contempt. The court finds that the petitioner, in response to the order to show

cause, made in open court certain statements set out in the judgment, and finds that by the use of such language he committed a contempt. If petitioner, in response to the order to show cause, had only asserted that he had said, not that the judge was corrupt, that another had said so, giving the name of the person making the charge, we do not see that this language, uttered in exculpation of the offense charged against him, would have constituted a contempt. But the finding shows more than this. It shows the petitioner went further, and stated that "he makes the assertion upon the information of others."

While the findings of the court are not very clearly stated in the judgment, yet every presumption is in favor of the judgment of the court, and we must take it as true from this finding that the petitioner not only admitted that he had made such a charge on the authority of others, but made the assertion in open court that the presiding judge was corrupt, stating that he did so, not of his own knowledge, but upon information given him by others.

In order that petitioner might defend himself against the charge that he had committed a contempt by asserting that the presiding judge of the court had accepted a bribe, it was unnecessary that he should renew the charge in open court. His doing so constituted another contempt which justified the judgment and the fine imposed. To enable the judge to preserve order and proper decorum in his court room, so that the business of the court may be transacted in an orderly way, it is necessary that courts should have power to punish for contempt those guilty of contemptuous or disorderly conduct in the presence of the court. It is a power that should be exercised with prudence and to the ends of justice only. But when a judgment of that kind is entered against an offender, the statements in the record must be taken in a proceeding of this kind as absolutely true, and we cannot interfere unless it clearly appears that the judgment is wrong. It does not so appear in this case, and the judgment must be affirmed. It is so ordered.

ON REHEARING.

Opinion delivered January 7, 1905.

RIDDICK, J.   After the above opinion had been handed down, and judgment entered in accordance therewith, the petitioner Davies filed a motion for rehearing.   He also alleged that the judgment of the court below was not entered at the term it was rendered, but afterwards at an adjourned term, and without notice to him, and that it did not correctly state the facts upon which the judgment of contempt was based, and he asked to be allowed time to secure an amendment of the judgment.   As the term of this court was approaching its end, the judgment rendered here was set aside, in order to afford petitioner time in which to have the judgment of the chancery court adjudging the contempt corrected.   Afterwards the petitioner was allowed another extension of time in which to obtain the correction of the judgment.   Speaking for myself, I will say that I differed from the other judges as to the expediency of granting this second extension of time, for, the term of the judge against whom the contempt was alleged to have been committed being about to expire, the effect of this extension was to permit the petitioner to present his petition for the correction of the judgment before another judge now presiding in that court. We must presume that all judges and courts are willing that their records should reflect the facts, and as petitioner had ample time to correct the record by petition to the judge who charged him with contempt, I was of the opinion that we should not allow him to intentionally postpone presenting such petition until after the expiration of the official term of the judge against whom the contempt was charged to have been committed.   It seems to me that the petitioner has been guilty of gross laches in this respect, and that it may establish a bad precedent to permit him to go further.   I should therefore favor overruling his motion and dismissing his petition on the ground of laches alone.   But the other judges, on account of the peculiar facts of this case, and in the desire to arrive at the truth, have come to a different conclusion, and the amended judgment is now before us for consideration.

The learned judge before whom the petition to amend was heard seems in permitting the amendment to have followed very closely the facts as shown by the report of a stenographer, who, at the request of the judge, took down the conversation between the petitioner Davies and the judge presiding at the time the judgment of contempt was rendered, and we have no reason to doubt its correctness. The substance of the facts, as shown by the amended judgment, are that the petitioner, being brought into court and asked if he had any evidence to offer showing why he should not be punished for contempt, replied that he knew nothing except what had been told him by others. He was then asked by the court. "Have you given publicity to what you have been told?" To which question petitioner responded, "I have said what I have been told." The court then said, "I now assess a fine against you for $50 and thirty days in jail for repeating what you have been told." He thereupon rendered judgment against him, both for a contempt not committed in the presence of the court and for contempt committed by language used in the presence of the court. The judgment for contempt not committed in the presence of the court was, as we stated in the former opinion, afterwards set aside, and the only question now relates to the contempt in the presence of the court. Now, it is evident, we think, that the reply of the petitioner to the question propounded by the court as to whether he had given publicity to what he had heard did not constitute another contempt committed in the presence of the court. We are not saying that the public repetition of such scandalous talk concerning the conduct of a judge in a case then pending before him would not constitute a contempt, for we are of the opinion that a public repetition of such scandalous charges might under some circumstances constitute a very grave contempt, which would merit severe punishment.

But that question is not before us, for the petitioner was fined for that contempt, and the fine imposed therefor was, on motion of an attorney of the court, remitted, and no question is raised as to that contempt. The judgment complained of here was imposed, or purported to be imposed, for contempt committed in the presence of the court. The question then which we have now to decide is whether a judge who has an attorney brought before him on a charge of contempt and asks him a question in reference to such contempt, can, where the attorney

answers the question truthfully and in a respectful manner, punish him for answering a question that he himself has asked him. If the petitioner had refused to answer a proper question, he might have rendered himself liable for contempt, and certainly it was no contempt of the court for the petitioner to do that which the court, by asking the question, in effect ordered him to do.

We are therefore of the opinion that the acts of the petitioner, as shown by the judgment, did not constitute a contempt in the presence of the court, and so much of the judgment as imposed a punishment upon him for such contempt will be set aside and quashed.